J-S63016-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.N.G.-W., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.W., MOTHER | : : : : : : : | |
| | : | No. 1798 EDA 2019 |

Appeal from the Order Dated May 23, 2019
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-AP-0000310-2019

BEFORE:   GANTMAN, P.J.E., MURRAY, J., and STRASSBURGER, J.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED NOVEMBER 22, 2019**

A.W. (Mother) appeals from the order involuntarily terminating her parental rights to her minor daughter, A.N.G.-W. (born August 2010) (Child), pursuant to 23 Pa.C.S.A § 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act.[1]  After careful review, we affirm.

The trial court summarized the factual and procedural history of this case as follows:

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Child's father, R.G. (Father), indicated his consent to voluntarily relinquish his parental rights to Child.  **See** N.T., 5/23/19, at 4-5.  A petition to voluntarily terminate Father's rights and praecipe of notice of intent to confirm was filed September 5, 2019.  **See** Petition, 9/5/19, at 1.  Father's termination was confirmed on September 25, 2019; Father has not separately appealed and is not a party to this appeal.

The family became known to the Department of Human Services ("DHS") on August 25, 2010, when DHS received a substantiated General Protective Services ("GPS") report which alleged Mother tested positive for marijuana and cocaine at the time she gave birth to Child [in August 2010]. On June 12, 2015, DHS received an indicated Child Protective Services ("CPS") report alleging that on September 10, 2013, Child was diagnosed with thirteen cavities. Mother, however, consistently minimized the seriousness of Child's dental problems and refused to take Child to treatment. Ultimately, Child did not receive oral surgery until Child's Maternal Grandmother became proactive and Child underwent surgery on September 2, 2015. An adjudicatory hearing was held on May 9, 2017[,] and Child was adjudicated dependent.

On July 10, 2017, the Community Umbrella Agency ("CUA") held a Single Case Plan ("SCP") meeting. The objectives identified for Mother were (1) to Clinical Evaluation Unit ("CEU") [*sic*] and to participate in court-ordered assessments including random drug screens; (3) [*sic*] to work with CUA to find housing; and (4) to maintain a relationship with Child through visitation. Following a court hearing on August 9, 2017, Mother reported to the CEU but failed to attend any of her scheduled random drug screens. On April 25, 2019, DHS filed the underlying Petition to Terminate Parental Rights because Mother had not completed her SCP objectives.

Trial Court Opinion, 9/10/19, at 2-3 (record citations omitted).

On May 23, 2019, the court convened a hearing on the petition. Mother was represented by counsel, but did not appear at the hearing. Child was represented by William Rice, Esquire. Testimony was offered from Turning Points for Children supervisor, Patrice Garvey; Paternal Grandmother, B.G., and social worker, Ms. Roya Paller. Beverly Pearson, Turning Points for Children Case Manager, was scheduled to testify, but Mother's counsel stipulated that Ms. Pearson's testimony would be in accordance with DHS's

statement of facts attached as Exhibit A to the petition to terminate Mother's parental rights. *See* N.T., 5/23/19, at 3-5, 10-11.

At the conclusion of testimony, the trial court changed Child's permanency goal to adoption and terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).

Mother timely filed a *pro se* notice of appeal.[2] On September 3, 2019, Mother's counsel filed a statement of errors complained of on appeal.[3]

---

[2] While hybrid representation is generally not permitted on appeal, this Court is required to docket a *pro se* notice of appeal "even in instances where the *pro se* appellant was represented by counsel in the trial court." **Commonwealth v. Williams**, 151 A.3d 621, 623 (Pa. Super. 2016) (emphasis and internal brackets omitted) (citation omitted). Mother's counsel has submitted all subsequent filings.

[3] Mother violated Pa.R.A.P. 1925(a)(2)(i) by failing to file a concise statement of errors complained of on appeal concurrently with her notice of appeal. Mother, through counsel, filed her Pa.R.A.P. 1925(b) statement on September 3, 2019. Although Mother filed her statement two months after her notice of appeal, there is no assertion of any prejudice, so we do not quash or dismiss her appeal. **See In re K.T.E.L.**, 983 A.2d 745, 747 (Pa. Super. 2009) (holding that failure to file a Rule 1925(b) statement concurrently with a children's fast track appeal is considered a defective notice of appeal, to be disposed of on a case-by-case basis, but did not result in dismissal or quashal where there was no prejudice to the other parties as a result of the late filing).

Additionally, Mother's Pa.R.A.P. 1925(b) statement indicates that she wished to challenge the change of Child's permanency goal to adoption. However, Mother did not file a notice of appeal from the dependency docket challenging Child's goal change, and does argue the goal change issue in her appellate brief. Accordingly, Mother has waived any challenge to Child's permanency goal change. **See Krebs v. United Refining Company of Pennsylvania**, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the statement of questions involved in his brief on appeal); **see**

On appeal, Mother raises the following issues for our review:

1. Whether the trial court erred by terminating the parental rights of [M]other pursuant to [23 Pa.C.S.A. § 2511(a)(1)] without clear and convincing evidence of [M]other's intent to relinquish her parental claim or refusal to perform her parental duties[?]

2. Whether the trial court erred by terminating the parental rights of [M]other pursuant to [23 Pa.C.S.A. § 2511(a)(2)] without clear and convincing evidence of [M]other's present incapacity to perform parental duties[?]

3. Whether the trial court erred by terminating the parental rights of [M]other pursuant to [23 Pa.C.S.A. § 2511(a)(5)] without clear and convincing evidence to prove that reasonable efforts were made by [the] Department of Human Services to provide [M]other with additional services and that the conditions that led to placement of [Child] continue to exist[?]

4. Whether the trial court erred by terminating the parental rights of [M]other pursuant to [23 Pa.C.S.A. § 2511(a)(8)] without clear and convincing evidence that the conditions that led to placement of [Child] continue to exist when [M]other presented evidence of compliance with the goals and objectives of her family service plan[?]

5. Whether the trial court erred by terminating the parental rights of [M]other pursuant to [23 Pa.C.S.A. § 2511(b)] without clear and convincing evidence that there is no parental bond between [M]other and [C]hild and that termination would serve the best interest of [Child][?]

Mother's Brief at 7.

We review cases involving the termination of parental rights according to the following standard:

---

also *In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011) (stating failure to include argument/discussion in brief as to issue results in waiver of that claim) and *In re M.Z.T.M.W.*, 163 A.3d 462, 465-66 (Pa. Super. 2017) (same).

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (internal citations and quotations omitted).

Termination requires a bifurcated analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

We thus turn to the trial court's order terminating Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). We have long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b). *In re B.L.W.,* 843 A.2d 380, 384 (Pa. Super. 2004) (*en*

*banc)*. Accordingly, we focus our analysis on 23 Pa.C.S.A. § 2511(a)(2) and (b).

The relevant subsection of 23 Pa.C.S.A. § 2511 provides:

> **(a)** **General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> ***
>
> **(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

To satisfy the requirements of Section 2511(a)(2), the moving party must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied."

*See In Interest of Lilley*, 719 A.2d 327, 330 (Pa. Super. 1998). The grounds for termination are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied. *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010). Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties. *Id.*

Mother argues that the court erred by terminating her rights pursuant to Section 2511(a)(2) because she successfully completed housing and mental health and financial counseling, and thus all grounds that had contributed to her previous incapacity were remedied. *See* Mother's Brief at 12.

Mother's argument is belied by the record. On the contrary, the record reflects that Mother did not accomplish the majority of her goals. Mother's goals were identified as complying with all court orders; complying with CEU's recommendations and participating in a court-ordered drug assessment, monitoring, and random screens; working with CUA to obtain appropriate housing; maintaining a relationship with Child through visitation; participating with CUA in planning; and meeting with her case manager to review goals and progress. *See* Petition to Terminate Parental Rights, 4/25/19, Exhibit A.

With regard to drug treatment, Mother initially scheduled an assessment appointment, rescheduled her appointment to September 26, 2017, and was subsequently a no-show. *Id.* At permanency review hearings and SCP meetings in November 2017, January 2018, February 2018, March 2018, April 2018, July 2018, October 2018, December 2018, and January 2019, the evidence indicated that Mother had not attended or completed drug treatment.

*Id.* Mother was repeatedly ordered to attend drug treatment at every status review and permanency review hearing, but did not do so. *Id.*

With regard to Mother's housing goals, the record indicated that Mother completed housing, mental health, and financial counseling. *Id.* However, the record is unclear as to whether Mother actually **obtained** stable housing. With regard to Mother's goal to meet with her case manager to review her goals and progress, the record reflects that Mother often was either not present at hearings or did not participate in SCP planning meetings. *Id.*

With regard to Mother's visitation with Child, Ms. Garvey testified that as of the date of the May 23, 2019 hearing, the last time Mother saw Child was September 27, 2018. *See* N.T., 5/23/19, at 11. Visits were offered but Mother did not attend. *Id.* When Mother had visited in the past, she did not interact appropriately with Child, and was often tearful, disruptive, or shared age-inappropriate information with Child. *Id.* at 16-17. After visits, Child was upset, agitated, and would act out. *Id.*

Consistent with the foregoing, we discern no error in the trial court's finding that competent, clear and convincing evidence supported the termination of Mother's parental rights pursuant to Section 2511(a)(2), based upon Mother's continued incapacity – namely, her inability to complete her court-ordered drug treatment and screening or to maintain a relationship with Child through visitation – that resulted in Child being without essential parental care, the cause of which "cannot or will not be remedied." *See Lilley*, 719 A.2d at 330; *Z.P.*, 994 A.2d at 1117.

- 8 -

Next, we consider whether Child's needs and welfare will be met by termination pursuant to Subsection (b). *See Z.P.*, 994 A.2d at 1121. "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *Id.* The court is not required to use expert testimony, and social workers and caseworkers may offer evaluations as well. *Id.* Ultimately, the concern is the needs and welfare of a child. *Id.*

We have stated:

> Before granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the intangible dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as well as the tangible dimension. Continuity of the relationships is also important to a child, for whom severance of close parental ties is usually extremely painful. The trial court, in considering what situation would best serve the child[ren]'s needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.

*Z.P.*, 994 A.2d at 1121 (quoting *In re C.S.*, 761 A.2d 1197, 1202 (Pa. Super. 2000)). The trial court may equally emphasize the safety needs of the child and may consider intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. *See In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011). "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

Mother argues that she and Child shared a strong emotional bond due to her status as Child's exclusive caregiver during the formative years of Child's life.  *See* Mother's Brief at 14.  She further argues that there is no evidence she cannot provide Child with the physical necessities of life.  *Id.* Mother contends that as a result, termination would not be in the best interests of Child because the severance of their bond would irreparably harm Child.  *Id.*

Upon review, we find no error of law or abuse of discretion in the trial court's conclusion that termination was in Child's best interests.  The record reflects that if Mother and Child share a bond, it is not a parental bond, and severance of Child's bond with Mother would not cause Child irreparable harm. We further note that Child expressed her desire to be adopted by Paternal Grandmother.

Ms. Garvey testified that Child expressed no desire to return home to Mother, and she has been living with Paternal Grandmother for almost two years.  *See* N.T., 5/23/19, at 12-13, 14-15.  While Child may have had a bond in the past with Mother, Mother had not visited with Child recently, and as a result, Ms. Garvey was unable to opine as to the status of the bond at the time of the hearing.  *Id.* at 13.  In the past, Child interacted with Mother more as a friend than a mother.  *Id.* at 16.  Mother was always "in and out" of the visits, would often cry, not understand proper boundaries, and discuss inappropriate topics.  *Id.* at 16-17.  After visits, Child was agitated and distraught.  *Id.* at 17.

In addition, Child views Paternal Grandmother as her parent and is very bonded with Paternal Grandmother; Child expressed a desire to remain in Paternal Grandmother's care. *Id.* Paternal Grandmother meets Child's needs and provides her with emotional support. *Id.* at 13-14. Ms. Garvey did not believe Child would suffer irreparable harm if Mother's rights were terminated, and opined that it was in Child's best interests for Mother's rights to be terminated. *Id.* at 14-15.

Consistent with Child's attorney, Mr. Rice, Ms. Paller testified that she had spoken to Child[4] and Child was fully aware of what adoption meant. *Id.* at 20. Child stated that she wished to be adopted by Paternal Grandmother and remain in her home. *Id.*

For the above reasons, we discern no abuse of discretion in the trial court's conclusion that Child's needs and welfare are best served by termination, and that Child did not share a parental bond with Mother that would cause her irreparable harm if severed. As clear and convincing evidence supports the trial court's termination of Mother's parental rights under Section 2511(a)(2) as well as Section 2511(b), we affirm the termination of Mother's parental rights. *See Z.P.*, 994 A.2d at 1126-27; *K.Z.S.*, 946 A.2d at 763.

Order affirmed.

---

[4] Child was approximately eight years and eight months old at the time of the hearing.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/22/19